DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Deon Davis, appeals from his convictions in the Summit County Court of Common Pleas. This Court reverses.
 I. {¶ 2} On December 4, 2002, a man robbed a Domino's Pizza shop at gunpoint. The perpetrator wore a yellow bandana to conceal his identity and ran to a waiting car after taking the money from the store. The store manager, Keith Byers, ran after the perpetrator following the robbery and observed him enter a car that was waiting approximately one-half block away. A delivery driver, Adam Norton, ran to his car following the robbery and began to follow the car that was waiting for the perpetrator. Several blocks into the pursuit, the perpetrators' car stopped, two men exited, and one man fired shots in the general direction of Mr. Norton. Mr. Norton then waited in his car at the end of the street for the police to arrive because the perpetrators had driven into a dead-end street.
 {¶ 3} Upon arriving at the scene of the abandoned car, police officers discovered two sets of footprints in the snow leading away from the vehicle. Police followed these footprints to an area near Alphada Place Apartments, but no immediate arrests occurred. Police, however, did briefly question Ira Calbert while near the apartments. Police then turned their investigation to the vehicle itself, which was registered to Nicole Clinton, who had reported the car stolen.
 {¶ 4} Upon arriving at the location where Ms. Clinton was working, officers learned that she had loaned her car to Bernard Calbert, Ira's brother, earlier that day. At the time the police arrived, Bernard and Appellant were at the residence with Ms. Clinton and based upon their investigation up to that point, officers brought Bernard and Appellant to the station and performed a gunshot residue ("GSR") test on Appellant.
 {¶ 5} Following an investigation, Appellant was indicted on one count of aggravated robbery, a violation of R.C.2911.01(A)(2), and one count of felonious assault, a violation of R.C. 2903.11(A)(2). Both counts in the indictment contained a firearm specification.
 {¶ 6} To meet its burden at trial, the State produced the testimony of Bernard, who testified as an accomplice. At the time of Appellant's trial, Bernard had pled guilty to aggravated robbery with a firearm specification, but he had not yet been sentenced. Bernard testified as follows. The robbery was Appellant's idea and Appellant had talked about "ganking" Domino's earlier on the day of the robbery. Bernard had driven Appellant to Domino's and Appellant had exited the vehicle with a yellow bandana on his person, and Appellant returned to the car yelling "go, go, go." Bernard also noted that Appellant had a gun when he returned to the car.
 {¶ 7} Bernard continued his testimony as follows. A man followed the car that he was driving away from the robbery. At a stop sign, Appellant and Ira exited the vehicle, and Appellant ran toward the car that was following them. Bernard then drove off and heard gun shots. Bernard parked the car a short distance away, walked to Appellant's house, and the two of them walked to the residence where Ms. Clinton was working that day.
 {¶ 8} Other than Bernard's testimony, the State produced little evidence linking Appellant to the robbery. The GSR test performed on Appellant came back negative, and no fingerprints were recovered from the stolen money or from the pizza store. The yellow bandana and the gun used in the robbery were never recovered. In addition, no witness other than Bernard was able to identify Appellant.
 {¶ 9} Appellant testified in his own defense, admitting that he was with Bernard and Ira during that day. Appellant testified as follows. He, Bernard, and Ira went to the mall in Ms. Clinton's car. The purpose of their trip to the mall was to get phone numbers from women, and they separated during the trip. After approximately two hours at the mall, Appellant returned to the parking lot with Bernard and Ira. At that time, the three of them observed that Ms. Clinton's car was missing. Appellant and Bernard then walked to the Ms. Clinton's workplace to inform her that her car had been stolen, and Ira walked to a nearby apartment.
 {¶ 10} The case was then presented to the jury, and Appellant was found guilty of felonious assault and aggravated robbery with a firearm specification. The jury, however, returned a not guilty verdict on the firearm specification related to the felonious assault charge. Appellant was then sentenced to a total of seven years incarceration. At his sentencing hearing, Appellant was not informed of his right to appeal. As a result, this Court granted his motion to file a delayed appeal. Accordingly, Appellant has appealed, raising five assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"The trial court commtted (sic) plain error and affected the outcome of [appellant's] trial by failing to instruct the jury per R.C. § 2923.03(D) that the testimony of the state's key witness, bernard calbert, an alleged accomplice, was subject to grave suspicion, and should be viewed with grave caution."
 {¶ 11} In his first assignment of error, Appellant argues that the trial court erred when it failed to instruct the jury as required by R.C. 2923.03(D). Because no objection to the jury instruction was made, Appellant asserts that the trial court's error amounts to plain error. This Court agrees.
 {¶ 12} Pursuant to Crim. R. 52(B), a plain error that affects a substantial right may be noticed by an appellate court despite not being brought to the attention of the trial court. However, notice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. Ohio v. Bray, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶ 12. Therefore, we will not reverse the trial court decision unless it has been established that the trial court outcome would have clearly been different but for the alleged error. Id.
 {¶ 13} When an accomplice testifies against a defendant, R.C.2923.03(D) requires that the trial instruct the jury substantially as follows:
"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
"It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
 {¶ 14} The parties do not dispute that the trial court failed to comply with R.C. 2923.03(D). They do, however, dispute the impact of the omission of the above jury instruction.
 {¶ 15} Appellant asserts that his conviction was based exclusively upon the testimony of the accomplice. In contrast, the State relies upon this Court's precedent to support its argument that plain error was not committed by the trial court. See State v. Wynn (Apr. 28, 1999), 9th Dist. No. 97CA006968;State v. Banaag (Jan 26, 2000), 9th Dist. No. 98CA0033. We find the instant matter distinguishable from our prior precedent and find that Appellant's argument has merit.
 {¶ 16} When determining whether the trial court committed plain error by failing to comply with R.C. 2923.03(D), this Court examines several factors. We look to the record to determine the scope of cross-examination of the accomplice that was permitted by the trial court. Wynn, supra, at *9. Further, we review whether the details of the accomplice's plea agreement were presented to the jury and whether the jury instructions that were actually given contain much of the substance of the instructions mandated by R.C. 2923.03(D). State v. Yarbrough,104 Ohio St.3d 1, 2004-Ohio-6087, at ¶ 83. Finally, we examine whether the accomplice's testimony was favorable to the defendant, justifying defense counsel's failure to request the required instruction as a tactical decision. Wynn, supra, at *9; Banaag, supra, at *14.
Scope of Cross-Examination and Details of the Accomplice'sPlea Agreement
 {¶ 17} Upon our review of the record, we cannot say that Appellant's counsel was given wide latitude during the cross-examination of Bernard Calbert. Appellant's counsel was able to demonstrate to the jury the details of Bernard's plea agreement. In addition, Appellant's counsel was permitted to establish that Bernard refused to implicate his brother Ira in the robbery. Appellant's counsel, however, was limited in his questioning of Bernard. On repeated occasions, State's objections were sustained when Appellant's counsel attempted to attack Bernard's credibility.
Substance of Jury Instructions
 {¶ 18} In its instructions, the trial court gave the following general instructions on witness credibility:
"You, the jury, are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence. To weigh the evidence you must consider the credibility of each person who testified. You must apply the test of truthfulness which you apply in your daily lives.
"These tests include the appearance of the witness on the stand; their manner of testifying; the reasonableness of the testimony; the opportunity he or she had to see, hear, or feel the things about which they testified; the accuracy of their memory; their frankness or lack of it; the witness' intelligence, bias, interest, if any; the witness' prior criminal record, if any, together with all the facts and circumstances surrounding the testimony."
 {¶ 19} We note that these standard jury instructions are nearly identical to those given in Banaag. Banaag, supra, at *13-14. The above instructions, however, do not comply in any meaningful way with the instructions the legislature has chosen to mandate for accomplice testimony. Rather, the jury was left to consider Bernard's credibility in the identical manner it judged the testimony of all other witnesses, including in the identical manner it judged the credibility of Appellant.
Substance of the Accomplice's Testimony
 {¶ 20} Unlike Wynn and Banaag, Bernard's testimony as an accomplice cannot be viewed to be favorable to Appellant in any manner. Bernard's testimony was the only evidence that identified Appellant as a party to the robbery. Further, Bernard testified that the robbery was Appellant's idea, that Appellant was the one who entered the store, and that he heard gun shots after Appellant exited the car. No other witness, however, was able to identify Appellant. In addition, no physical evidence was recovered that linked Appellant to the crime. Gun shot residue tests on Appellant's hands came back negative, and no fingerprints were recovered from the pizza shop or from the money that was stolen. Based upon our review of the record, the State could not have proven its case beyond a reasonable doubt without Bernard's testimony. Accordingly, we find that Yarbrough is not binding and is inapplicable. See Yarbrough, at ¶ 83 (finding no plain error when there was "overwhelming evidence" of guilt without the accomplice's testimony).
 {¶ 21} Based upon the State's heavy reliance upon Bernard's testimony, the absence of any other identification of Appellant, and the absence of any physical evidence linking Appellant to the crime, we find that Appellant has met his burden under the plain error doctrine. Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II
"The trial court committed plain error by accepting an inconsistent jury verdict within the same count of the indictment when the jury returned a verdict of guilty on the charge of felonious assault and not guilty of the gun specification as to that count therby (sic) depriving [appellant] of due process of law guaranteed by the fourteenth amendment to the constitution."
 ASSIGNMENT OF ERROR III
"The trial court committed plain error by sentencing [appellant], a first time offender, to more than the statutory minimum term without making the required findings on the record at sentencing per R.C. 2929.14(B)."
 ASSIGNMENT OF ERROR IV
"The trial court erred by answering the jury's questions outside [appellant's] presence thereby violating [appellant's] right to appear and defend in person guaranteed by article I, section 10 of the Ohio constitution and the Sixth Amendment of the united states constitution."
 ASSIGNMENT OF ERROR V
"Trial counsel's failure to request an accomplice jury instruction, failure to object to the jury's inconsistent verdict and/or failure to object to the trial court's Non-Minimum sentence absent the required statutory findings deprived [appellant] of effective assitance (sic) of counsel guaranteed by the Sixth Amendment."
 {¶ 22} Given this Court's resolution of Appellant's first assignment of error, Appellant's remaining assignments of error are moot, and this Court declines to address them. See App.R. 12(A)(1)(c).
 III. {¶ 23} Appellant's first assignment of error is sustained. Appellant's remaining assignments of error are rendered moot and we decline to address them. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Carr, P.J. Batchelder, J. concur.