DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Jermaine R. Woods, appeals his conviction in the Wayne County Court of Common Pleas for trafficking in crack cocaine and possession of crack cocaine. We affirm.
 {¶ 2} On August 30, 2006, members of the Wooster Police Department entered the residence of Jeffrey Tomassetti in Wooster, Ohio, after Mr. Tomassetti confirmed other drug intelligence indicating that the residence was the scene of drug-related activity. Officers found three people inside, including Defendant. After conducting a search of the residence, officers seized assorted items of drug *Page 2 
paraphernalia, a used syringe, several plastic bags of marijuana, 8.62 grams of crack cocaine, and $1,500. Defendant was arrested at the scene.
 {¶ 3} A jury found Defendant guilty of trafficking in cocaine in violation of R.C. 2925.03, a felony of the second degree; possession of crack cocaine in violation of R.C. 2925.11, a felony of the third degree; and possession of marijuana in violation of R.C. 2925.11, a minor misdemeanor. The trial court sentenced Defendant to prison terms of five and three years on the respective felony charges. The trial court also fined Defendant $100 for the misdemeanor offense, but suspended the fine. Defendant timely appealed, raising one assignment of error.
 ASSIGNMENT OF ERROR "There was insufficient evidence to support the jury's verdicts of guilty as to the trafficking in crack cocaine and possession of crack cocaine counts of the indictment, and those convictions were against the manifest weight of the evidence."
 {¶ 4} Defendant's first assignment of error asserts that his convictions for possession of crack cocaine and trafficking in crack cocaine are supported by insufficient evidence and are against the manifest weight of the evidence. His argument in support of his assignment of error, however, relates entirely to his conviction for possession of cocaine, and our discussion is limited accordingly. See, generally, App.R. 16(A)(7) and Loc.R. 7(A)(7). See, also, State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3, quoting App.R. 16(A)(7) (noting that "[i]t is the duty of the appellant, not this court, to demonstrate his assigned error *Page 3 
through an argument that is supported by citations to legal authority and facts in the record."). With respect to his conviction for possession of cocaine, Defendant has argued that the State did not demonstrate that he was the owner or possessor of the crack cocaine and that Eric Watson, a witness for the State who was also charged as a result of the search, provided "obviously biased and self-serving testimony" at trial.
 {¶ 5} When reviewing a trial court's denial of a Crim.R. 29 motion, this Court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,653. "In essence, sufficiency is a test of adequacy." State v.Thompkins, 78 Ohio St.3d 380, 386.
 {¶ 6} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of *Page 4 
witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 7} R.C. 2925.11(A) prohibits any person from knowingly obtaining, possessing, or using a controlled substance. Possession of greater than five but less than ten grams of crack cocaine is a felony of the third degree. R.C. 2925.11(C)(4)(c). Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be either actual or constructive. State v. Kobi (1997),122 Ohio App.3d 160, 174, citing State v. Haynes (1971), 25 Ohio St.2d 264,269-70. "Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a *Page 5 
finding of constructive possession." (Internal citations omitted.)State v. Lamb, 9th Dist. No. 23418, 2007-Ohio-5107, at ¶ 12. While some factors, such as mere access to drugs, are insufficient to establish constructive possession on their own, "viewing these factors together as a whole can be used as circumstantial evidence to establish constructive possession." State v. Owens, 9th Dist. No. 23267, 2007-Ohio-49, at ¶ 23.
 {¶ 8} This is not the rare case in which the jury's verdict created a manifest miscarriage of justice that warrants a new trial. Sergeant Gregory Bolek, a fifteen-year veteran of the Wooster Police Department, testified that he responded to The Counseling Center to provide security for a transport to Barberton Hospital. According to Sgt. Bolek, the subject, Mr. Tomassetti, told him that several individuals from out-of-town were dealing drugs from his residence and that he was afraid to remove them from the home. He also told Sgt. Bolek that one of the individuals was providing him with drugs in exchange for a place to stay. Sgt. Bolek noted that Mr. Tomassetti's residence had previously been the subject of "continuous drug intel" and noted that the location was "one of the more active ones in town."
 {¶ 9} Sgt. Bolek testified that he contacted the owner of Mr. Tomassetti's apartment, who accompanied him to the unit. Sgt. Bolek was joined at the residence by Lieutenant John Quicci and Officers Matthew Smucker and Corey Monchilov. According to Lt. Quicci, who approached the front entrance with Sgt. *Page 6 
Bolek, the officers could hear people inside, "like someone was running around[.]" Loren Hershberger, an occupant of the house, opened the back door and allowed officers Smucker and Monchilov to enter, then walked through the residence to the front door and allowed Sgt. Bolek and Lt. Quicci to enter as well. The officers found three men inside who, according to Lt. Quicci, were known to police "from prior encounters."
 {¶ 10} Sgt. Bolek testified that Defendant permitted him to retrieve identification from his backpack and that, in the course of doing so, he found a plastic baggie that appeared to contain marijuana. Lt. Quicci also testified that he noticed a baggie that contained "green vegetable matter" in plain view in the living area of the apartment. At that point, according Sgt. Bolek's testimony, a warrant to search the residence was obtained. Sgt. Bolek further testified that during the search, he located three baggies of crack cocaine inside a purple Crown Royal bag which, in turn, was concealed in a black nylon bag:
 "There were three individual plastic baggies that were like a bulk-almost looked like a bulb of garlic. You open up the plastic baggy and there was [sic] individually small thumbnail size or fingernail size or less individually packaged rocks that were twist tied into very small plastic baggies."
Officer Monchilov, who also participated in the search, testified that he found a bag of crack cocaine concealed behind a ceiling tile with a large amount of money "wadded" up and wrapped in plastic. *Page 7 
 {¶ 11} Officer Donald Hall, a narcotics officer who assisted with the search, testified that he had been in the Tomassetti residence two or three times over the course of four months and that he "would consider that to be a crack house." He testified that he had seen Defendant "in cars around" the house on earlier occasions.
 {¶ 12} Eric Watson, one of the other individuals found in the Tomassetti residence, testified on behalf of the State. He admitted that he was in jail at the time of his testimony awaiting sentence after pleading guilty to drug-related charges also arising from this incident. He denied that the State had offered him a reduced charge in exchange for his testimony, and emphasized that he had contacted police on his own initiative. Mr. Watson testified that he met defendant at Mr. Tomassetti's residence on August 29, 2006, when Defendant arrived from Detroit, Michigan. He testified that Defendant was dealing drugs from Mr. Tomassetti's home and providing Mr. Tomassetti with drugs in exchange for lodging. He denied that he had seen Mr. Tomassetti selling drugs.
 {¶ 13} Mr. Watson testified that he purchased crack cocaine from Defendant and described the transaction as follows:
 "Q: Can you describe what happened or describe the entire process when you had bought that crack cocaine from Jermaine Woods?
 "A: I told him I wanted an eight ball. He was like, no, I'll get you a deal.
 "* * * *Page 8 
 "Q: What was that deal?
 "A: I had $100 and he gave me [$]150 worth. He was like do an eight ball, you know, in pieces.
 "Q: Okay, so this crack cocaine — what is — is an eight ball just one big piece? Is that what you're saying?
 "A: Yes.
 "Q: And instead of allowing you to buy one big piece he made you buy several pieces?
 "A: Yes.
 "Q: How were these little pieces of crack cocaine wrapped?
 "A: Like little bitty pieces.
 "Q: Were they wrapped in plastic as well or no?
 "A: Yes.
 "Q: And this all came from a purple Crown Royal bag, is that right?
 "A: Yes."
Mr. Watson also testified that throughout the evening, "[p]eople [were] running in and out buying crack cocaine from Jermaine Woods. He was giving — they was giving him credit cards for the crack cocaine." According to Mr. Watson, Defendant got the crack cocaine that he sold "[o]ut of his pocket in a purple Crown Royal bag." Mr. Watson testified that when police arrived at the house, Defendant "hid his stuff." He acknowledged that, in his written statement, he phrased this differently, writing that Defendant "ran and put the drugs up." *Page 9 
 {¶ 14} Officer Quinn McConnell, also of the Wooster Police Department, testified that he took a statement form Mr. Watson after Watson sent a note from jail indicating that he wanted to speak with police. Officer McConnell testified that Mr. Watson told him that the drugs belonged to Defendant and described his own purchase. Officer McConnell agreed that parts of Mr. Watson's story were inconsistent with his experience handling drug-related incidents. Specifically, he noted that in his experience, it was unlikely that a drug dealer would allow a purchaser to select from several rocks of crack cocaine, as Mr. Watson testified. He also observed that Mr. Watson seemed "somewhat limited, very slow" with respect to intelligence based on his memory of the incident and the content of his written statement.
 {¶ 15} Defendant, who testified in his own defense, admitted that he spent the night at Mr. Tomassetti's residence and that he knew there was marijuana in the house. He denied any knowledge that there was crack cocaine in the house and specifically denied knowing that any was concealed in the ceiling. According to Defendant, it was Mr. Watson who had a purple bag on the evening in question, which he kept at his waist.
 {¶ 16} The evidence at trial included testimony that Defendant had been staying at the home where the cocaine was found; that he had been providing crack cocaine to Mr. Tomassetti in exchange for lodging and had been selling crack cocaine to others; and that he sold crack cocaine to Mr. Watson from the *Page 10 
purple Crown Royal bag from which the officers ultimately recovered over four grams of crack cocaine. Mr. Watson's testimony provided a direct connection between Defendant and the cocaine that was found in the purple bag. His testimony that Defendant "hid his stuff when the police arrived at the residence also linked Defendant to the crack cocaine found in the ceiling. Defendant's argument that the evidence weighs heavily against a determination that he was in possession of the crack cocaine is therefore an argument that Mr. Watson's testimony is unbelievable because it lacks credibility.
 {¶ 17} This Court has reviewed and weighed the evidence that was before the trial court and having considered the reasonable inferences that may be drawn from that evidence, we cannot say that the jury lost its way and that Defendant's conviction is a manifest miscarriage of justice. With respect to Mr. Watson's testimony "`the jury [was] free to believe, all, part, or none of the testimony of each witness.'"State v. Griffin, 9th Dist. No. 23459, 2007-Ohio-1944, at ¶ 9, quotingPrince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35. This court may reverse a conviction and order a new trial only in the exceptional case where the evidence weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340. This is not such a case.
 {¶ 18} Defendant's conviction for possession of cocaine is not against the manifest weight of the evidence. Consequently, this Court also concludes that his conviction is supported by sufficient evidence. SeeRoberts at *2. *Page 11 
 {¶ 19} Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J. CONCURS *Page 12