[Cite as *State v. Mack*, 2014-Ohio-1387.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26859 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIEL R. MACK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 10 2837 (B) |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

MOORE, Presiding Judge.

{¶1} Appellant, Daniel Mack, appeals his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} For two months, Mr. Mack lived in a Kenmore Boulevard townhouse with his girlfriend, Kaitlyn Carpas. Mr. Mack decided to move out after a fight with Ms. Carpas, and their landlord saw Mr. Mack load some of his possessions into a white car and drive away on the afternoon of October 1, 2012. Within a few hours, Akron police approached the residence after a tip that methamphetamine was being produced and used at the location. Ms. Carpas consented to a search and, while inside, police detected an odor distinct to the manufacture of methamphetamine and found numerous items related to its production in close proximity to one another. Ms. Carpas was arrested, and she implicated Mr. Mack. A warrant then issued for Mr. Mack's arrest as well.

{¶3} Ms. Carpas and Mr. Mack were charged with illegal manufacture of drugs in violation of R.C. 2925.04(A), a second-degree felony; illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a third-degree felony; and aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1), a fifth-degree felony. Ms. Carpas pleaded guilty to illegal assembly or possession of chemicals and aggravated possession. The charge of illegal manufacture was dismissed, and the trial court sentenced Ms. Carpas to two years of community control. She agreed to testify against Mr. Mack, whose case proceeded to a jury trial. During the trial, Ms. Carpas testified that although she used methamphetamine, Mr. Mack was solely responsible for the manufacturing that took place in their apartment. The trial court did not instruct the jury regarding accomplice testimony, and the jury found Mr. Mack guilty of all charges. The trial court sentenced him to four years in prison, and Mr. Mack appealed.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS INSTRUCTION TO THE JURY IN FAILING TO GIVE THE JURY THE REQUIRED CAUTIONARY INSTRUCTION REGARDING THE TESTIMONY OF AN ALLEGED ACCOMPLICE UNDER R.C. 2923.03(D).

{¶4} Mr. Mack's first assignment of error is that the trial court erred by failing to instruct the jury regarding the accomplice testimony of Kaitlyn Carpas. Because Mr. Mack did not object to the jury instructions at trial, he has forfeited all but plain error, and consequently, we may only recognize error that affects a substantial right as necessary to prevent a manifest miscarriage of justice. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶15-16.

{¶5} When an alleged accomplice testifies against a defendant in a jury trial, the trial court must instruct the jury substantially as follows:

> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

R.C. 2923.03(D). "When considering whether failure to instruct a jury under R.C. 2923.03(D) amounts to plain error, this Court considers the scope of cross-examination of the accomplice; whether the accomplice's plea agreement was presented to the jury; whether the trial court substantially complied with R.C. 2923.03(D); and whether trial counsel may have made a tactical decision not to object in light of favorable testimony by the accomplice." *State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 21, citing *State v. Simpson*, 9th Dist. Summit No. 25363, 2011-Ohio-2771, ¶ 19 and *State v. Davis*, 9th Dist. Summit No. 22395, 2005-Ohio-4083, ¶ 16. The ultimate question is whether in the absence of the alleged error, the defendant would have obtained a different result at trial. *State v. Ross*, 9th Dist. Lorain No. 09CA009742, 2012-Ohio-536, ¶ 46, 48.

{¶6} The existence of "error * * * [is] the starting point for a plain-error inquiry," *State v. Hill*, 92 Ohio St.3d 191, 200 (2001), and so our analysis begins with the requirements of R.C. 2923.03(D). "At minimum, an accomplice must be someone who has been indicted for the crime of complicity." *Smith* at ¶ 22, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 131-132. In this case, Ms. Carpas qualifies as an accomplice because she not only was charged with the crime of complicity to commit the charged offenses, but as a codefendant in the commission of the offenses themselves. As such, R.C. 2923.03(D) required the trial court to instruct the jury in a manner substantially consistent with the instruction provided therein. The parties agree that

the trial court did not instruct the jury regarding Ms. Carpas' testimony. By the plain terms of R.C. 2923.03(D), the trial court erred in this omission.

{¶7} With respect to plain error, therefore, we turn to the factors set forth in *Smith* and, ultimately, to the question of whether the trial court's error determined the outcome of Mr. Mack's trial. In this case, counsel for Mr. Mack vigorously cross-examined Ms. Carpas in relation to her decision to testify against Mr. Mack and her credibility in general. Ms. Carpas testified that her agreement to testify was, at least in part, consideration for the recommendation of a community control sentence instead of a prison term. On the other hand, with respect to whether the failure to object to the omitted jury instruction may have been a tactical maneuver on the part of defense counsel, Ms. Carpas's testimony was entirely unfavorable to Mr. Mack: she squarely placed the blame for the manufacture of methamphetamine in the residence upon him, disavowed any interest in the components found in the house, and denied that she herself had any involvement in the manufacturing process. *See State v. Davis*, 9th Dist. Summit No. 22395, 2005-Ohio-4083, ¶ 20. The trial court's jury instructions "left [the jury] to consider [Ms. Carpas's] credibility in the identical manner it judged the testimony of all other witnesses" and did "not comply in any meaningful way with the instructions the legislature has chosen to mandate for accomplice testimony." *Id.* at ¶ 19.

{¶8} Finally, we consider the evidence at trial to determine whether the trial court's error determined the outcome of Mr. Mack's trial. *See id.* We first consider Mr. Mack's convictions for illegal assembly or possession of chemicals for the manufacture of drugs and aggravated possession of drugs. Under R.C. 2925.041(A), "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I

or II in violation of section 2925.04 of the Revised Code." Under R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" These statutes share the common element of possession, which requires "control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶9} Nonetheless, a defendant who enjoys dominion and control over drug paraphernalia in a residence may be found to have constructive possession. *State v. Woods*, 9th Dist. Wayne No. 07CA0067, 2008-Ohio-1468, ¶ 7. "While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession." (Internal citations omitted.) *State v. Lamb*, 9th Dist. Summit No. 23418, 2007-Ohio-5107, ¶ 12. Some facts standing alone, such as access to drugs, are insufficient to establish constructive possession on their own, but when viewed together, these factors may constitute circumstantial evidence that demonstrates constructive possession. *Woods* at ¶ 7, citing *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23.

{¶10} In this case, the owner of the Kenmore Boulevard property testified that Mr. Mack and Ms. Carpas assumed possession of their apartment from the previous tenants, with whom they had been staying for an extended period of time. According to the landlord, Mr. Mack and Ms. Carpas were the only residents of the apartment for about two months before Mr. Mack moved out. The landlord had regular interaction with Mr. Mack on the premises up to and including the day that he moved out. Within a matter of just a few hours after Mr. Mack left the apartment, police found pervasive evidence of methamphetamine use and production in the residence. According to Lieutenant Brian Simcox, who searched the apartment, the telltale odor

of methamphetamine production was present in the bedroom and basement of the home. Lieutenant Simcox also found numerous items consistent with a "shake and bake" method of methamphetamine production, including loose pseudoephedrine tablets, coffee filters that tested positive for methamphetamine, a razor blade and a "snort straw," muriatic acid, cold packs, and coffee filters soaked with solvent. Lieutenant Simcox opined that the evidence he found indicated recent methamphetamine production and, in the case of the solvent-soaked coffee filters, "very recent" activity.

{¶11} Even without Ms. Carpas's testimony, the testimony of Mr. Mack's landlord and Lieutenant Simcox established that methamphetamine and the components necessary for its manufacture were pervasive within the residence that he shared with Ms. Carpas and that he was present in that residence only two hours before the evidence was seized. In light of this evidence, we cannot say that Mr. Mack would not have been convicted of illegal assembly or possession of chemicals for the manufacture of drugs and aggravated possession of drugs in the absence of the trial court's error.

{¶12} Mr. Mack's conviction for illegal manufacture of methamphetamine, however, presents a different situation. R.C. 2925.04(A) prohibits any person from knowingly manufacturing or otherwise engaging in any part of the production of controlled substances. "'Manufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J). When there is evidence indicating that drugs are being cultivated or produced by someone, the mere presence of a defendant on property also accessible to others, without more, does not establish a violation of R.C.

2925.04(A). *See State v. Jones*, 6th Dist. Lucas Nos. L-00-1231, L-00-1232, L-00-1233, 2003-Ohio-219, ¶ 103. *Compare State v. Inskeep*, 2nd Dist. Champaign No. 2003 CA 22, 2004-Ohio-4927, ¶ 13-19 (concluding that there was sufficient evidence of cultivating marijuana when the defendant had lived alone for many years on property under his exclusive control and his actions in response to the presence of police officers demonstrated his knowledge and participation in cultivation).

{¶13} Lieutenant Simcox testified that he observed significant evidence demonstrating the presence of methamphetamine production at the Kenmore Boulevard townhouse. Mr. Mack shared the apartment with Ms. Carpas for two months, but Mr. Mack's landlord testified that he received complaints from other tenants regarding significant traffic in and out of the rental unit. Ms. Carpas is an acknowledged drug user who, despite her protestations to the contrary, displayed detailed knowledge of the methamphetamine production process during her testimony. Yet her testimony alone points to Mr. Mack as the person responsible for the methamphetamine production. Police did not recover any physical evidence that would demonstrate a connection, nor did any other witnesses testify in that regard. The State introduced letters written to Ms. Carpas by Mr. Mack and has argued that they contain statements that implicate him independent from her testimony. Those letters, however, are ambiguous. Without Ms. Carpas's accompanying testimony, they are subject to many possible interpretations other than an admission of Mr. Mack's guilt.

{¶14} Without Ms. Carpas's testimony, there is no evidence that points to Mr. Mack as a person responsible for manufacturing the methamphetamine. With respect to Mr. Mack's conviction for illegal manufacture of methamphetamine, therefore, the trial court committed plain error by failing to instruct the jury as required by R.C. 2923.03(D). Mr. Mack's first

assignment of error is sustained in part. With respect to his convictions for illegal assembly or possession of chemicals for the manufacture of drugs and aggravated possession of drugs, however, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

[MR.] MACK WAS RENDERED INEFFECTIVE ASSISTANCE BY DEFENSE COUNSEL AT TRIAL.

{¶15} Mr. Mack's second assignment of error is that he was denied effective assistance of counsel by his attorney's failure to request a complicity instruction. Because this Court has sustained Mr. Mack's first assignment of error with respect to his conviction for illegal manufacture of methamphetamine, his second assignment of error is moot in connection with that conviction. *See State v. Jamhour*, 10th Dist. Franklin No. 06AP-20, 2006-Ohio-4987, ¶ 14. We consider Mr. Mack's second assignment of error, therefore, in connection with his remaining convictions.

{¶16} In order to demonstrate ineffective assistance of counsel, a defendant most show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. "Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Cromartie*, 9th Dist. Medina No.

06CA0107-M, 2008-Ohio-273, ¶ 25, citing *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 27.

{¶17} As discussed in our analysis of Mr. Mack's first assignment of error, the evidence supported his convictions for illegal assembly or possession of chemicals for the manufacture of drugs and aggravated possession of drugs even if Ms. Carpas's testimony is disregarded entirely. Consequently, his argument that he would have obtained a different result at trial on these charges had a complicity instruction been given is speculative, at best. Mr. Mack has not demonstrated a reasonable probability that he would have been acquitted of these charges in the absence of counsel's error, and his second assignment of error is overruled in part.

III.

{¶18} Mr. Mack's first assignment of error is sustained with respect to his conviction for illegal manufacture of methamphetamine, but overruled with respect to his other convictions. His second assignment of error is moot with respect to his conviction for illegal manufacture of methamphetamine, but is overruled with respect to his other convictions. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded for a new trial on the charge of illegal manufacture of methamphetamine.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.