DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Desmond Ward ("Ward"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 30, 2006, Ward was the passenger in a white Bronco, driven by Chad Wesley. Detective Parnell of the Akron Police Department observed the vehicle and believed that it matched the description of a vehicle that had been involved in an unrelated crime. Detective Parnell was not in uniform and was in an unmarked car. He followed the Bronco. Soon thereafter, several marked police cars joined Detective Parnell and a slow speed chase ensued. During the chase, officers observed what appeared to be a bag of white powder and a black bag thrown out the driver's side window. Officers retrieved these items and the chase continued until the driver of the Bronco crashed into a tree. After the crash, the driver attempted *Page 2 
to flee the scene and was subsequently apprehended. Ward, who had been injured in the crash, did not leave the scene. He was handcuffed and taken in to police custody.
 {¶ 3} After being treated for his injuries, Ward was taken to the Summit County Jail. While in custody, on September 2, 2006, Ward was written up on three rule violations. Later that same day, as he was being transported to a new cell, he made what officers considered to be an aggressive movement towards the officers. Officers pushed him to the ground and Ward sustained facial injuries.
 {¶ 4} On September 8, 2006, Ward was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A), one count of criminal gang activity, in violation of R.C. 2923.42(A), one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), one count of receiving stolen property, in violation of R.C. 2913.51(A), one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), one count of possessing drug abuse instruments, in violation of R.C. 2925.12, one count of having weapons under a disability, in violation of R.C. 2923.13(A)(3), one count of assault, in violation of R.C. 2903.13(A), and one count of resisting arrest, in violation of R.C. 2921.33(A). The assault charge related to the September 2, 2006 incident at the Summit County Jail. On September 15, 2006, Ward pled not guilty to the charges in the indictment. On September 27, 2007, a supplemental indictment was filed, charging Ward with an additional count of criminal gang activity, in violation of R.C. 2923.42(A).
 {¶ 5} On October 1, 2007, the matter proceeded to a bench trial. The criminal gang activity counts were dismissed prior to trial. At the close of the State's case, the trial court granted Ward's Crim. R. 29 motion for the counts of possession of drug abuse instruments and receiving stolen property. The trial court found Ward not guilty on the resisting arrest, *Page 3 
improperly handling a firearm, and having a weapon under disability counts. The trial court found him guilty of assault on a police officer, possession of cocaine, and tampering with evidence. Ward was sentenced to a total of five years of incarceration. He has timely appealed from his convictions, raising three assignments of error for our review. We have rearranged and combined some of his assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR III "THE TRIAL COURT IMPROPERLY CONSIDERED A (SIC) UNCERTIFIED LABORATORY REPORT IN COMING TO ITS FINAL VERDICT; THERE WAS NO CERTIFIED LABORATORY REPORT IN THE COURT'S POSSESSION AT THE TIME IT HANDED DOWN ITS FINAL VERDICT NOR WAS THERE A STIPULATION PERMITTING THE COURT TO CONSIDER ANY OTHER REPORT."
 {¶ 6} In his third assignment of error, Ward contends that the trial court improperly considered an uncertified laboratory report in coming to its final verdict as there was no certified laboratory report in the trial court's possession at the time it handed down its final verdict nor was there a stipulation permitting the trial court to consider any other report. We find that Ward has waived this argument.
 {¶ 7} Our review of the record, as well as Ward's brief on appeal, indicates that he stipulated to the use of laboratory reports from the Bureau of Criminal Identification and Investigations ("BCI") to show that the white substance found by officers on August 31, 2006 was cocaine and that the gun was operable, relieving the State from the requirement of presenting testimony on these issues. While the record reflects that a conversation regarding the use of a copy of the certified report ensued at the close of the State's case, it is clear from the transcript that Ward's counsel did not object to the use of the copy. Instead, when asked whether he had any objections to the admission of the State's evidence, including the two BCI reports, *Page 4 
Ward's counsel indicated that he had no objections and the trial court admitted the evidence. A discussion was held after the admission as to whether the State had the original documents. The State indicated that it did and that it would submit them to the trial court. Ward's counsel stated that he did not "want to give you a hard time. I want to make sure you have it." He further stated that "[i]f they show up, I don't have a big problem. I want to make sure they exist." While we do not find that these statements amount to an objection, we would note that they occurred after the exhibits were admitted without objection. Although Ward argues that "the trial court issued its findings without the benefit of the required certified laboratory report[,]" there is nothing in the record before this Court that indicates that the report did not exist or that the State did not present a certified copy to the trial court as discussed at trial.
 {¶ 8} The Ohio Supreme Court has "long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121. However, "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim. R. 52(B). However, Ward has neither argued plain error, nor has he explained why we should delve into these issues for the first time on appeal. Accordingly, Ward's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN OVERRULING [WARD'S] MOTION TO GRANT A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT (SIC) VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 5 
 {¶ 9} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 10} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 11} Therefore, we will address Ward's claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 12} A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654,2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be *Page 6 
reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 13} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 14} Ward was convicted of one count of tampering with the evidence, in violation of R.C. 2921.12(A)(1). Pursuant to this statute;
 "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1).
 {¶ 15} Ward was also convicted of one count of drug possession, in violation of R.C. 2925.11(A). Pursuant to this section, "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A).
 {¶ 16} The Ohio Supreme Court has held that "a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is stated in terms of the principal offense and does not mention complicity." (Quotations and alterations omitted.) State v. Herring (2002),94 Ohio St.3d 246, 251. R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 17} In the instant case, although he was indicted on the principal offenses, the trial court found Ward guilty of possession and tampering with evidence on the theory of complicity. R.C. 2923.03(A)(2) states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the other person in the commission of the crime, and shares the other person's criminal intent. *Page 7 State v. Johnson (2001), 93 Ohio St.3d 240, syllabus. His intent may be inferred from the circumstances surrounding the crime. Id. His mere presence at the scene of a crime, however, is not sufficient. Id. at 243.
 {¶ 18} The trial court found by circumstantial evidence that Ward aided and abetted Chad Wesley ("Wesley"). If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'"State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *2, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value.'" State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *15, quoting Jenks, 61 Ohio St.3d at paragraph one of the syllabus.
 {¶ 19} With regard to the possession and tampering with evidence charges, the State presented evidence from four Akron Police Department officers; Detective Darrell Parnell, Officer Rodney Sherman, Officer Howard Vaughn, and Officer Twila Gaines.
 {¶ 20} According to Detective Parnell, he noticed two men in a white Bronco on Interstate 77, traveling north. In an attempt to observe the occupants, Parnell pulled up next to the vehicle. According to Parnell, the "passenger kind of looked over and glanced at me and I decided rather than be recognized, I would back off, get the license plate number so we could ascertain the name of the driver." Parnell testified that he was concerned he would be recognized because he frequently worked on the west side of Akron and that many people knew him as a police officer. Parnell noticed that after the passenger glanced at him, he turned to the driver and said something. Parnell identified Ward as the passenger. Soon thereafter, the driver quickly moved to the far left lane, then moved three lanes to the right. As Parnell attempted to *Page 8 
move to the right lane, the Bronco cut across traffic to the left lane. Parnell testified that he believed that the occupants recognized him and probably saw him on his radio, requesting the possible need to make a stop of a suspect's vehicle. Parnell testified that the vehicle then cut across three lanes of traffic and exited the highway.
 {¶ 21} Parnell testified that he could hear police sirens and that he observed the Bronco pull into a parking lot and stop briefly. He noted a conversation occurred between the two occupants and then the men drove away. At this point, according to Parnell and other officers' testimony, marked police cars attempted to make a stop of the vehicle. It appeared to Parnell that the Bronco was being evasive. Eventually, the Bronco appeared to stop. When uniformed officers got out of the cruiser and attempted to approach the vehicle, the Bronco drove off. Officers gave chase and testified that they then observed a packet of white substance thrown out of the driver's side window. The parties stipulated to the BCI report that stated that the white substance retrieved by the police was indeed cocaine. The officers testified that due to the height of the Bronco, they could only see two heads in the vehicle.
 {¶ 22} Shortly thereafter, a black bag was also thrown out the driver's side window. Parnell testified that he retrieved the black back and that it appeared that approximately 14 individuals were waiting on the street for the bag. He testified that he had to draw his gun and tell the people to back off, and that a few people tried to run away with the bag. Parnell discovered that there was a loaded gun in the bag.
 {¶ 23} Officers testified that the Bronco tried to make a turn but crashed into a tree at a high rate of speed. Wesley attempted to run, but was pursued and captured by the police. Vaughn testified that he yelled at Ward to exit the vehicle. As he approached the passenger side, he noted that Ward appeared to be attempting to get out of the vehicle. Ward was injured, and it *Page 9 
appeared that his head had hit the windshield. Vaughn testified that he yelled at Ward to give him his hands so that he could handcuff him, but that Ward did not comply. Eventually, Ward was tased by another officer and the EMS was called.
 {¶ 24} Initially, we note that the evidence clearly establishes that both Wesley and Ward knew that they were being followed by the police. Detective Parnell testified that although he was working in plain clothes, it appeared as if Ward recognized him and that it was his impression that Wesley and Ward likely saw him using his hand-held radio. He further testified that they "did an evasive move to get off 76 from 77 at Frederick Blvd." At that point, Parnell testified that he heard police sirens and that the Bronco pulled into a parking lot for a brief moment, where Ward and Wesley had a conversation, then drove away. Further, according to officer testimony, soon after the men left the parking lot, they were followed by officers in marked police cruisers, with lights and sirens engaged. Finally, officers testified that the Bronco appeared to stop, but when the officers approached the vehicle, it again drove off.
 {¶ 25} It is well established that evidence of flight is admissible evidence of a "`consciousness of guilt." State v. Brady, 9th Dist. No. 22034, 2005-Ohio-593, at ¶ 9, quoting State v. Taylor (1997),78 Ohio St.3d 15, 27. Although Ward was not driving the vehicle, the evidence shows that he aided and abetted Wesley's flight from the police by supporting, assisting, encouraging, or cooperating with the chase. Therefore, we infer a "consciousness of guilt[,]" Brady, supra, quotingTaylor, supra, for both Wesley and Ward. This consciousness of guilt allows for the inference that Ward shared Wesley's criminal intent as it related to the possession of cocaine charge. Likewise, when the vehicle finally came to a stop, Ward was uncooperative with the officers which further points to consciousness of guilt. As we have stated above, Ward could be found guilty for the principal offense of possession of drugs based on the *Page 10 
theory that he aided and abetted Wesley in the crime. Accordingly, Ward's conviction for possession of cocaine was not against the manifest weight of the evidence.
 {¶ 26} We next turn to Ward's conviction for tampering with evidence. The trial court found that the evidence was not sufficient to show that Ward knew of the gun in the black bag, however, the trial court stated that "[h]aving lifted the bag while it contains the gun, measuring cup and sandwich bags, the Court is convinced, beyond a reasonable doubt that Ward assisted Wesley in throwing the bag. The Court believes that the driver would have been unable to hoist the bulky and misshapen bag from anywhere in the car without assistance." Accordingly, the trial court found Ward guilty of tampering with the evidence. The record contains no testimony with regard to the actual weight of the bag. Further, the trial court's statement appears to be inconsistent with the finding that the evidence failed to show that Ward knew that there was a gun in the bag. This finding prompted a verdict of not guilty of having a weapon under disability or for improperly handling a firearm charges. However, Ward's charge of tampering with the evidence specifically referenced the gun and/or the packet of white substance. The latter was thrown out of the vehicle separately from the black bag. Accordingly, having found that the possession of cocaine charge was not against the manifest weight of the evidence, we would find that Ward's charge of tampering with evidence, as it relates to the possession of cocaine charge, was not against the manifest weight of the evidence.
 {¶ 27} Finally, Ward was convicted of assault, in violation of R.C. 2903.13(A). This section states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." R.C. 2903.13(A). Assault is a fourth degree felony "[i]f the victim of the offense is a peace officer * * *, while in the performance of their official duties[.]" R.C. 2903.13(C)(3). *Page 11 
 {¶ 28} The State presented the testimony of Deputy Eric Vaughn. Deputy Vaughn testified that on September 2, 2006, he was working at the Summit County Jail. He stated that he observed Ward using the phone after the inmates had been ordered to their cells. When confronted, Ward did not comply. Deputy Vaughn testified that this "[b]latant disrespect" was a violation of the rules. Deputy Vaughn testified that he again told Ward to go to his cell and that Ward assumed a "fighting stance" and challenged him to a fight. Deputy Vaughn escorted Ward to his cell and wrote him up for three rule violations.
 {¶ 29} Deputy Vaughn testified that later that day he was transferring Ward to another unit. Ward continued to make comments to Deputy Vaughn, and therefore Vaughn handcuffed him. Once they arrived at Ward's new cell, Deputy Vaughn testified that he warned Ward that he should face the wall and that any movement from the wall would be seen as an aggressive action and that he would take appropriate actions. Deputy Vaughn testified that despite this warning, Ward turned toward him aggressively and Deputy Vaughn grabbed him. Deputy Vaughn testified that Ward was swinging at him and fighting with the deputies. According to Deputy Vaughn, the deputies sprayed Ward with pepper spray and he continued to struggle with them. Deputy Vaughn testified that Ward sustained injuries from the fight and was sent to the hospital.
 {¶ 30} It is clear from the testimony that Ward knowingly attempted to cause harm to Deputy Vaughn. Further, it is clear that Deputy Vaughn was a peace officer performing his official duties. Accordingly, Ward's conviction for assault was not against the manifest weight of the evidence.
 {¶ 31} As we have disposed of Ward's claims that his convictions were against the manifest weight of the evidence, we similarly dispose of his claims that they were based on *Page 12 
insufficient evidence. Roberts, supra. Accordingly, Ward's first and second assignment of error are overruled.
 III. {¶ 32} Ward's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J. WHITMORE, J. CONCUR. *Page 1