[Cite as *State v. Smith*, 2012-Ohio-794.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25650 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DE ANTHONY K. SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 06 1717(B) |

DECISION AND JOURNAL ENTRY

Dated: February 29, 2012

CARR, Presiding Judge.

{¶1}     Appellant, De Anthony K. Smith, appeals his convictions by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}     Forty-three year old Abdulmahdi "J.J." Al-Garawi supported his family, in part, by selling shoes and purses from the back of his wife's minivan. Customers contacted him by calling his cell phone and arranging to meet at a mutually agreeable place. According to his wife, Al-Garawi almost never met a customer after dark and usually came home within twenty minutes. On April 22, 2010, he made two exceptions, first leaving home in the middle of dinner to meet a man near Buckingham Avenue in Akron. After receiving two calls from a female when he returned home, Al-Garawi went out again. Within minutes of stopping the van to talk to the woman, someone shot Al-Garawi in the torso. The single bullet destroyed his liver and right kidney before it exited the left side of his body and re-entered his left arm, causing massive

blood loss. Al-Garawi died two hours later while in surgery. His van, which had been emptied of all its merchandize, was found on fire in a driveway on Hardesty Avenue on the near west side of Akron.

{¶3} Cell phone records led police to Smith's girlfriend and, ultimately, to Smith, who had the phone on the night of the murder. Along with another man, a grand jury indicted Smith on charges of aggravated murder in violation of R.C. 2903.01(B), murder in violation of R.C. 2903.02(B), aggravated robbery in violation of R.C. 2911.01(A)(1)/(3), tampering with evidence in violation of R.C. 2921.12(A)(1), and obstructing justice in violation of R.C. 2921.32(A)(5). A gun specification under R.C. 2941.145 accompanied three of the four charges. The trial court dismissed the aggravated murder charge after the State presented its case-in-chief, and a jury found Smith guilty of the remaining charges and specifications. The trial court sentenced him to an aggregate prison term of 21 years to life. Smith timely appealed, raising three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

APPELLANT'S CONVICTIONS FOR MURDER, AGGRAVATED ROBBERY, AND TAMPERING WITH EVIDENCE, ALL WITH GUN SPECIFICATIONS, WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

{¶4} In his first assignment of error, Smith has argued that his convictions for murder, aggravated robbery, and tampering with evidence are supported by insufficient evidence because there was no evidence that he actively participated in the crimes as an aider and abettor. We disagree.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, at ¶

18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶6} Smith's first assignment of error challenges three of his four convictions, each of which was accompanied by a firearm specification under R.C. 2941.145. R.C. 2903.02(B) prohibits causing the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" Aggravated robbery is prohibited by R.C. 2911.01(A), the relevant portions of which provide that:

> No person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * [or] [i]nflict, or attempt to inflict, serious physical harm on another.

R.C. 2911.01(A)(1)/(3). Tampering with evidence is prohibited by R.C. 2921.12, which provides, in part, that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1).

{¶7} R.C. 2923.03(A)(2) prohibits any person "acting with the kind of culpability required for the commission of an offense" from aiding or abetting another in committing the offense. In order to prove complicity by aiding and abetting, the State must prove:

> that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. The criminal intent of the aider and abettor "can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13, citing *Johnson* at 245. Although presence at the scene of the crime by itself is not sufficient evidence of complicity, "[t]his rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.* at 243. As with proof of any element of an offense, complicity may be proved by circumstantial evidence, which has the same probative value as direct evidence. *See State v. Ward*, 9th Dist. No. 24105, 2008-Ohio-6133, ¶ 18. The conviction of the principal offender is not a defense to a charge of complicity. R.C. 2923.03(B).

{¶8} In this case, the evidence related to Smith's presence, companionship, and conduct before and after Al-Garawi's murder was sufficient to support his convictions as an aider and abettor. Huda Al-Garawi testified that her husband left to sell some shoes at "Buckingham, Boone" around 8:05 p.m. and returned about fifteen minutes later. Smith admitted that he placed this call from his girlfriend's cell phone and that he met Al-Garawi without buying any shoes. Ms. Al-Garawi recalled that her husband received another call right after he got home, and because her husband put the call on speaker phone, she knew that the caller was a woman. Ms. Al-Garawi testified that her husband told the woman to call back in the

morning but, instead, she called back around 9:00 p.m. This time, Al-Garawi agreed to meet her on Buckingham Street.

{¶9}    Jasmin Cameron testified that her boyfriend, Xzavier Penwell, came to her house on the evening of April 22nd and told her to call a man to look at some shoes because "[h]e said this man did not come out after nighttime." Penwell dialed the phone, then handed it to Cameron. She spoke briefly with "J.J.," then hung up and went downstairs with Penwell, where she found Smith waiting on the porch. She testified that the three of them walked toward the intersection of Buckingham and Boone. According to her testimony, there was no conversation with Smith as they walked. Penwell handed her the phone again, and she called a second time. Testimony established that the cell phone she used belonged to Smith's girlfriend, who had given it to him for the night. Records from the service provider verified that calls were made from that phone to Al-Garawi's phone at 9:06 p.m. and 9:15 p.m.. The outgoing number had been blocked so that the number would not be identified with the incoming call on Al-Garawi's phone.

{¶10} Cameron testified that after talking briefly to Al-Garawi, she asked to see some shoes. She recalled that as he started to get out of the van, she heard Penwell say "lay down" and then a gunshot. She testified that she did not see the shot fired, but she believed that it came from behind her. Cameron did not know where Smith was at the time, but she believed that he was standing behind her and Penwell. She testified that Smith did not say anything. According to her testimony, she ran away when the shot was fired, briefly hearing someone she believed to be Al-Garawi fleeing behind her and screaming. Cameron went home, and her phone records verify that she placed a lengthy call to a number with a North Carolina area code. She testified that after Penwell called her later that night, Smith picked her up and they walked together to a nearby house without speaking. Cameron spent the night at the house with Penwell, Smith, and

several others. Both Penwell and Smith were there the whole time, and Cameron testified that during the course of the evening, Penwell told her about dividing the merchandize in Al-Garawi's van with Smith and setting the van on fire.

{¶11} Michael and Dawn Dolbow lived at the intersection of Buckingham and Boone, and they looked out the window when they heard a shot fired outside their house. Both testified that they saw a van back quickly up Boone, which is a dead-end street, and drive away on Buckingham. Both remembered that there were two black males in the van when it passed. Both saw a black woman running away.

{¶12} Using cell phone records subpoenaed from Nextel/Sprint, police constructed a timeline of telephone calls and their approximate locations. The records from the phone that Smith used that night established that about eight minutes after the shooting, at 9:27 p.m., a call was placed to the home phone number of acquaintances of Penwell and Smith who lived on the 1300 block of Hardesty Boulevard on the near west side of Akron. The records also indicate that the call was picked up by a cell phone tower further to the west than earlier calls, indicating that the call was made in transit. Calls placed at 10:11 p.m. and 10:18 p.m. were picked up by a tower still further to the west. At 11:14 p.m., Al-Garawi's van was reported abandoned and on fire in a driveway in the 1200 block of Hardesty Boulevard. At 11:54 p.m., a call was placed from the same phone to Cameron's house, but that call was picked up by a tower on the east side of Akron.

{¶13} Viewing this evidence in the light most favorable to the State, a reasonable trier of fact could conclude that, rather than merely being present at the scene of the murder, Smith aided and abetted Penwell in the commission of the crime. Specifically, the trier of fact could conclude that Smith met with Al-Garawi immediately before Penwell made contact with him

through Cameron; accompanied them to the intersection of Buckingham and Boone; and fled in the van with Penwell after the shooting to a location on Hardesty Boulevard, where they removed the merchandise from the van and set it on fire. Regardless of the fact that Penwell was the principal offender, the evidence at trial was sufficient to lead a reasonable trier of fact to infer Smith's complicity from his "presence, companionship, and conduct * * * before and after" the murder. *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, at ¶ 13, citing *Johnson*, 93 Ohio St.3d at 245. Smith's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

> APPELLANT'S CONVICTION FOR OBSTRUCTING JUSTICE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶14}** In his second assignment of error, Smith has argued that his conviction for obstructing justice is against the manifest weight of the evidence because the jury wrongly discredited his testimony regarding duress. We disagree.

**{¶15}** When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986).

**{¶16}** Under R.C. 2921.32(A)(5), "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for a crime or to assist another to benefit from the commission of a crime, and no person * * * shall * * * [c]ommunicate false information to any person[.]" When a defendant asserts an affirmative defense, "[t]he burden of going forward with the evidence * * *, and the burden of proof, by a preponderance of the

evidence * * *, is upon the accused." R.C. 2901.05(A). Duress is an affirmative defense to any crime except aggravated murder. *State v. Getsy*, 84 Ohio St.3d 180, 197-198 (1998). It implies compulsion by force or threat of force against the defendant or a close relative. *See State v. Woods*, 48 Ohio St.2d 127, 136 (1976), *vacated on other grounds*, *sub nom. Woods v. Ohio*, 438 U.S. 910 (1978). It is force of a nature that "overcome[s] the mind or volition of the defendant so that he acted other than he ordinarily would have acted in the absence of those influences." *Id.*, 48 Ohio St.2d at 137.

{¶17} Smith admitted that he lied to police officers during five separate interviews after Al-Garawi's murder, but maintained that he did so under the duress of threats by Penwell against his life and the lives of his family members. Specifically, he testified that Penwell came to his home after the murder, pointed a gun at him, threw $200 on the floor, and told him to "keep my mouth closed and if anybody find out he was going to kill me[.]" According to Smith, Penwell then picked up a picture of Smith's girlfriend and children and said, "If you want you and your family to live, you will keep your mouth closed." He also testified that after his first interview with police, someone in a gray car pulled a gun on him and told him "to keep my mouth closed" and that he received subsequent threats from Penwell while they were in jail at the same time.

{¶18} According to the police officers who interviewed Smith, his version of events on the night of Al-Garawi's murder changed during each interview. Detective James Pasheillich, who interviewed Smith several times, testified that although Smith mentioned that someone in a car had threatened him, he never mentioned being threatened the night of the murder. In one of the interviews, Smith denied that he was afraid of Penwell's family, but testified at trial that his answer was "just being smart." He initially lied about his address, but only hours later told the truth, despite now claiming that he lied out of fear in the first place.

{¶19} This is not the exceptional case in which the evidence weighs heavily in favor of Smith's version of events. Instead, the trier of fact could credit the testimony of other witnesses and conclude, without losing its way, that Smith lied to police not out of fear of Penwell, but to protect himself from suspicion. Smith's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR IN FAILING TO GIVE THE JURY AN INSTRUCTION ON THE TESTIMONY OF AN ACCOMPLICE.

{¶20} Smith's final assignment of error is that the trial court committed plain error by not instructing the jury to consider the testimony of Jasmin Cameron as testimony of an accomplice. Because Smith did not object to the jury instructions at trial, he has forfeited all but plain error, and consequently, we may only recognize error that affects a substantial right as necessary to prevent a manifest miscarriage of justice. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15-16.

{¶21} Under R.C. 2923.03(D), a trial court must provide a specific instruction to the jury when an alleged accomplice testifies against the defendant. The charge must substantially reflect the following:

The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

*Id*. When considering whether failure to instruct a jury under R.C. 2923.03(D) amounts to plain error, this Court considers the scope of cross-examination of the accomplice; whether the accomplice's plea agreement was presented to the jury; whether the trial court substantially

complied with R.C. 2923.03(D); and whether trial counsel may have made a tactical decision not to object in light of favorable testimony by the accomplice. *State v. Simpson*, 9th Dist. No. 25363, 2011-Ohio-2771, ¶ 19, citing *State v. Davis*, 9th Dist. No. 22395, 2005-Ohio-4083, ¶ 16.

{¶22} In this case, however, we need not engage in this analysis because Cameron was not an accomplice within the meaning of R.C. 2923.03(D). At minimum, an accomplice must be someone who has been indicted for the crime of complicity. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 131-132. Some courts have noted that in rare circumstances, the testimony of an unindicted witness implicates the same concerns as accomplice testimony. *See*, *e.g.*, *State v. Sillett*, 12th Dist. No. CA2000-10-205, 2002-Ohio-2596, ¶ 19. Specifically,

> The purpose of the cautionary instruction requirement is to ensure that juries are informed that the testimony of an accomplice is inherently suspect because an accomplice is likely to have a motive to conceal the truth or otherwise falsely inculpate the defendant. * * * [T]here may be rare instances in which a person who may be an accomplice is not indicted for a crime, but has motivation to lie or conceal the truth in return for their testimony. For example, an accomplice may be offered immunity in exchange for testimony and never be indicted for the crime. In such cases, there is reason for the witness' testimony to be viewed with the same suspicion as that of an indicted accomplice.

*Id*. In those cases, an accomplice instruction may be required if the witness received favorable treatment in return for the testimony. *Id.* at ¶ 20. In determining whether the accomplice instruction is required in these circumstances, courts therefore consider whether the record reflects an agreement to testify and avoid indictment in addition to adequate opportunity for cross-examination and general instructions regarding witness credibility. *See State v. Howard*, 5th Dist. No. 06CAA100075, 2007-Ohio-3669, ¶ 62; *Sillett* at ¶ 20.

{¶23} In this case, the record demonstrates that Cameron was neither indicted as an accomplice nor offered favorable treatment in exchange for her testimony. She admitted that she walked to the intersection of Buckingham and Boone with Smith and Penwell; that she made

calls to Al-Garawi from a phone that Penwell provided; and that she fled the scene as soon as the gunshot was fired. She also admitted that she later concealed some of the shoes that Penwell took from the van and that she initially lied to the police because she did not want to incriminate Penwell, with whom she had been romantically involved. Cameron was never indicted. According to her testimony, the police and the assistant prosecutor told her that she "most likely wouldn't be," but "[t]hey didn't say anything about cooperating." Detective Pasheillich emphasized that no promises were made to her.

{¶24} Under these circumstances, we cannot say that Cameron's testimony raised the same concerns as accomplice testimony such that the trial court's failure to instruct the jury under R.C. 2923.03(D) was plain error. Smith's third assignment of error is overruled.

### III.

{¶25} Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---
DONNA J. CARR
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.