[Cite as *State v. Phillips*, 2017-Ohio-1186.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27552 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID P. PHILLIPS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 09 2503A |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2017

CARR, Presiding Judge.

{¶1}  Appellant, David Phillips, appeals his convictions by the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  On August 29, 2013, B.P. and his friend, P.W., stopped by the Lovers Lane Market in Akron on their way to a mall.  P.W. went into the Market, but B.P. waited in the driver's seat of his borrowed car.  B.P., who held a valid permit to carry a concealed weapon, sat with a firearm in his lap because it was his practice to carry a gun whenever he went out.  Although the weapon was not secured on his person, the safety was in place.  It was a hot day, and B.P. left the car windows open.  Some people whose faces were familiar to B.P. approached the vehicle and spoke to him through the passenger window.  As they walked away, he turned toward the driver's side window to find R.L., a minor, raising a gun.  R.L. simultaneously

pointed his gun at B.P., grabbed the firearm from B.P.'s lap, and demanded "everything" B.P. had.

{¶3} B.P. pushed the car door open and, as he tried to deescalate the situation, noticed that other people were approaching. One man gestured in a way that B.P. interpreted as a sign that he was the wrong person. Around the same time, P.W. returned to the car. As P.W. approached, B.P. attempted to grab the gunman's weapon. During the struggle that followed, the gunman shot B.P. in the abdomen. Before he fled the scene, B.P. saw that the gunman had trained both weapons on P.W. When he glanced back toward the vehicle, a group of men had surrounded P.W.

{¶4} P.W. sustained two gunshot wounds and, after being shot, was beaten by the gathered men. The group dispersed after a passing driver honked his horn, but P.W. died before first responders arrived on the scene. Phillips was identified as one of the men who participated in the assault on P.W. after the shooting, and police learned from surveillance video that Phillips had been in and around the Market with the shooter and other participants beforehand. Phillips was charged with murder in violation of R.C. 2903.02(A), felony murder in violation of R.C. 2903.02(B), aggravated robbery in violation of R.C. 2911.01(A)(1) and (A)(3), felonious assault in violation of R.C. 2903.11(A)(1), and participating in a criminal gang. The charges were accompanied by firearm, repeat violent offender, and criminal gang activity specifications.

{¶5} A jury found Phillips guilty as an accomplice of felony murder, aggravated robbery in violation of R.C. 2911.01(A)(1), felonious assault, and the firearm specifications that accompanied each of those charges. The trial court merged the convictions for complicity to commit felonious assault and felony murder, sentenced him to consecutive prison terms of fifteen years to life for complicity to commit felony murder, three years for the firearm

specification, and eleven years for complicity to commit aggravated robbery. The trial court also concluded that Phillips was a repeat violent offender and imposed an additional prison term of six years. After trial, Phillips pleaded guilty to the charge of participating in a criminal gang, which had been severed from the other charges for trial to the bench. The trial court sentenced him to two years in prison on that charge. Phillips filed this appeal.

II.

**ASSIGNMENT OF ERROR I**

THE PROSECUTION PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT PHILLIP'S [*SIC*] CONVICTIONS.

**{¶6}** Phillips' first assignment of error is that his convictions are based on insufficient evidence. Specifically, he has argued that the State did not present any evidence that could lead to the conclusion that was complicit in the commission of an aggravated robbery of P.W. He has also argued that it follows that there is not sufficient evidence to convict him of complicity to commit the felony murder predicated upon that offense. We disagree.

**{¶7}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶8} R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The offense of violence upon which the charge of complicity to commit felony murder is based in this case is aggravated robbery. R.C. 2911.01(A)(3) provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another." Theft, in turn, is prohibited by R.C. 2913.02(A)(4) and (A)(5), which prohibits any person, "with purpose to deprive the owner of property" from knowingly obtaining or exerting control over property by threat or intimidation.

{¶9} "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender." *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, ¶ 21, citing R.C. 2923.03(F). Complicity is established when a person acts with the level of culpability required for an offense in soliciting or procuring another to commit the offense, aiding or abetting in the commission of the offense, conspiring to commit the offense, or causing an innocent or irresponsible individual to commit the offense. R.C. 2923.03(A). In this case, therefore, the State was required to prove that Phillips aided and abetted R.L. in committing an aggravated robbery against P.W. that caused P.W.'s death as a proximate result of the aggravated robbery.

{¶10} B.P. testified that two individuals crossed the street and spoke with him through the passenger window of his car then, after they left, he turned to find R.L. with gun drawn at the driver's side window. R.L. wrested a gun, which belonged to P.W., from B.P.'s lap. B.P. recalled that as he tried to deescalate the situation, another man approached and signaled to R.L.

as if to communicate that B.P. was the wrong object of the robbery. B.P. identified Phillips as that man. B.P. testified that as he fled, he looked back and noticed a group of people gathered around P.W.

{¶11} R.M. witnessed the events from a garage across the street. He testified that while he was at the garage waiting for a car repair, he noticed that Phillips was also present. R.M. recalled that he looked across the street when he heard gunfire. He saw B.P. run from the scene, then saw R.L. shoot P.W. during a scuffle. R.M. also described how, when P.W. did not relent immediately after the shooting, other men assaulted him, including Phillips, who "sucker punched" him. R.M. testified that Phillips' punch left P.W. "basically laid flat out" and that R.L., who was standing right next to P.W., picked up the gun, shot P.W. again, and emptied his pants pocket.

{¶12} Surveillance video documented that R.L., Phillips, and several other individuals gathered in the Market approximately forty minutes before the robbery and shooting took place. Detective Jeff Leslie, who analyzed the surveillance video, testified as still frames were displayed. The video demonstrated that Phillips was in the Market with the other men until about thirty minutes before the crimes occurred. At that point, he walked across the street, but walked back toward B.P.'s parked car when other individuals approached the passenger window. The video depicts Phillips moving toward the vehicle from behind, then disappearing into a blind spot that included the driver's side of the vehicle. Phillips emerged from the blind spot at approximately the same time that P.W. left the Market and walked toward the car. While P.W. approached the car, Phillips appears to confer with a group of people standing outside the Market, then turns and approaches the car again. Phillips moves into the blind spot that includes the driver's side of the car, followed by Philips moments later. A surveillance camera located

inside the Market soon picked up Phillips as he entered shirtless, put his shirt back on, and punched the air before leaving again.

{¶13} Based on this evidence, a jury could reasonably conclude that Phillips was complicit in both the planning and execution of the aggravated robbery of P.W., which proximately resulted in P.W.'s death. Specifically, the evidence indicates that Phillips was present in the Market with the other individuals who participated in the crimes beforehand, that he returned to the parking lot and approached B.P.'s car from behind as P.W. returned to the car and signaled to R.L. in a way that appeared to indicate that B.P. was not the right robbery victim; and that he participated in the beating that immediately preceded the removal of items from P.W.'s pockets. Accordingly, there is sufficient evidence supporting Phillips' convictions, and his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

PHILLIPS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Phillips' second assignment of error is that his conviction is against the manifest weight of the evidence because the eyewitness accounts differed from the surveillance video, because there is no evidence that Phillips provided verbal encouragement to R.L. during the course of the crimes, and because the jury found him not guilty of complicity in the aggravated robbery of B.P., but guilty of complicity in the aggravated robbery of P.W. We disagree.

{¶15} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶16} Phillips' first argument is that the testimony of the three eyewitnesses should be discounted because the details that they recalled differed at certain points from the surveillance video. We disagree with this assessment. Significantly, each of the eyewitnesses described their recollection of the events that occurred a year before trial from a vantage point different than that of the security cameras. L.G., a local resident who heard gunfire and drove through the area as the assault on P.W. was in progress, described what he saw from the vantage point of his vehicle. L.G. could not identify any participants in the crimes, but he placed the location of the assault in the middle of the Market's parking lot, and he described the intensity of the physical assault.

{¶17} Similarly, R.M. described the events as he witnessed them from the garage across the street. He acknowledged that he knew Phillips, grew up with his family, and was testifying only because he was under subpoena. Although some details of the timing of the events are different than the surveillance video, they are, for the most part, complementary. R.M. witnessed the altercation in the parking lot, testified that Phillips crossed back over Lovers Lane and ultimately joined in, described Phillips' participation, and noted that R.L. emptied P.W.'s pocket after Phillips' punch left him immobile.

{¶18} B.P. described the events from yet another perspective. Although he could not view the people coming and going from the vicinity of the parked car, he placed Phillips nearby while R.L. attempted to rob him and described a gesture to R.L. that appeared to communicate that he was the wrong victim. B.P. identified both R.L. and Phillips.

{¶19} Phillips correctly observes that none of the witnesses testified that he provided verbal encouragement before, during, or after the crimes. As the eyewitnesses' testimony demonstrates, however, none of them were located in such proximity to the perpetrators that they could have heard such details. In addition, although explicit communication can form the foundation for complicity, it can also be established through surrounding circumstances. *See* R.C. 2923.03(A)(2). As this Court has observed:

> The criminal intent of the aider and abettor "can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006–Ohio–3056, ¶ 13, citing *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001). Although presence at the scene of the crime by itself is not sufficient evidence of complicity, "[t]his rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.* at 243. As with proof of any element of an offense, complicity may be proved by circumstantial evidence, which has the same probative value as direct evidence. *See State v. Ward*, 9th Dist. No. 24105, 2008-Ohio-6133, ¶ 18.

*State v. Smith*, 9th Dist. Summit No. 25650, 2012-Ohio-794, ¶ 7. Although no witnesses testified about the content of conversations between Phillips, R.L., and the other participants in the crimes, the circumstantial evidence at trial demonstrated that Phillips was not an innocent bystander without a connection to the crimes other than his presence, but an active participant throughout.

{¶20} Finally, Phillips has argued that his convictions are against the manifest weight of the evidence because the jury found him not guilty of complicity to commit aggravated robbery against B.P. or P.W. under R.C. 2911.01(A)(1), but guilty of complicity in the aggravated robbery of P.W. charged under R.C. 2911.01(A)(3). Phillips has not separately argued that the trial court erred by accepting inconsistent jury verdicts, so our consideration of this argument is limited to whether it bears on the weight of the evidence. It does not. As described above, the

evidence supports the jury's conclusion that Phillips was complicit in R.L.'s act of aggravated robbery by means of inflicting serious physical harm on P.W. under R.C. 2911.01(A)(3).

**{¶21}** Having reviewed all of the testimony at trial and considered the credibility of all of the witnesses, we cannot conclude that this is the exceptional case in which the evidence at trial weighs heavily against the conviction. Phillips' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHICH PREJUDICED PHILLIPS BY ADMITTING IRRELEVANT AND PREJUDICIAL PHOTOS OF PHILLIPS AND [R.L.], THE PRINCIPAL [OFFENDER], OVER THE OBJECTION OF DEFENSE COUNSEL.

**{¶22}** Phillips' final assignment of error is that the trial court erred by admitting pictures drawn from social media that were not relevant to the charges at issue. We disagree.

**{¶23}** Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable[.]" Evid.R. 401. All relevant evidence is admissible, except as provided in the Rules of Evidence. *See generally* Evid.R. 402; Evid. R. 403. Phillips has not argued that the trial court should have excluded the photographs under Evid.R. 403(A) or (B), so our consideration is limited to whether the trial court abused its discretion in determining that the photographs were relevant. *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 91, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.

**{¶24}** Phillips argues that three photographs were irrelevant and, therefore, improperly admitted. Each photograph was obtained from social media accounts by Detective Rodney Criss, who testified that each photograph was dated within one year of the events at issue. The photographs depict Phillips with R.L. and other individuals who participated in the crimes.

Phillips does not dispute that he is pictured in the photographs, nor does he challenge their authenticity.

{¶25} Each of these photographs demonstrates that Phillips had prior, close associations with R.L. and with others involved in the crimes. By demonstrating that Phillips was associated with these individuals in advance, the photographs tend to make it less probable that Phillips was an uninvolved bystander who happened upon the melee and had limited involvement. For that reason, the trial court did not abuse its discretion by determining that the photographs were relevant and admitting them on that basis.

{¶26} Phillips' third assignment of error is overruled.

III.

{¶27} Phillips' assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JENNIFER A. CUNDIFF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.